IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LAWRENCE V. WILDER, | * | |
| Petitioner, | * | |
| | | Civil No.: RDB-09-155 |
| v. | * | |
| STEVEN C. PRESTON, Secretary, Department of Housing and Urban Development, et al., | * | |
| | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Petitioner Lawrence Verline Wilder ("Wilder") filed this *pro se* action against Steven Preston, Secretary of the Department of Housing and Urban Development ("HUD"); John Bravacos, Regional Director of HUD; and James Kelly, Field Office Director of HUD for the City of Baltimore (collectively "Defendants"). Wilder asks this Court to issue a writ of mandamus compelling HUD to continue investigating certain inquiries under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.* Pending before this Court is Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment (Paper No. 9). Defendants' submission has been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). Wilder is not entitled to mandamus relief because he does not have a clear right to the relief requested, the Defendants do not have a clear duty to provide this relief, and because there were alternative remedies available. Additionally, there has been no tolling of the applicable limitations periods under the FHA. Therefore, Defendants' Motion to Dismiss (Paper No. 9) is GRANTED.

**BACKGROUND**

This Court reviews the facts relating to this claim in the light most favorable to the petitioner. *See, e.g., Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Wilder alleges that Defendants failed to properly investigate and address his housing discrimination inquiries with respect to his rental of an apartment. The inquiries at issue in this case are Inquiry Nos. 261527, 261528, 262494, 262495, 262497 and 267003, which were filed with the Office of Fair Housing and Equal Opportunity ("FHEO"). This Court addresses all six inquiries relating to the claim.[1]

**I.     Inquiry Nos. 261527 and 261528**

On August 27, 2008, FHEO received Inquiry Nos. 261527 and 261528, both of which allege housing discrimination based on race, sex, and disability. That same day, an Equal Opportunity Specialist interviewed Wilder regarding these inquiries. With respect to Inquiry No. 261527, Wilder was informed that the property in question was exempt from the FHA because the owner of the duplex lived in the building. *See* 42 U.S.C. § 3603(b)(2) (exempting certain rooms or units in dwellings "if the owner actually maintains and occupies one of such living quarters as his residence"). Wilder was told that Inquiry No. 261528 was untimely because the alleged incident occurred nearly three years before he contacted FHEO. The FHA only permits HUD to pursue discrimination complaints filed within one year of the alleged violation. 42 U.S.C. § 3610(a)(1)(A)(i). Accordingly, on August 27, 2008, FHEO informed Wilder in two separate letters that it lacked jurisdiction to further investigate either of these inquiries.

**II.    Inquiry Nos. 262494, 262495 and 252497**

---

[1] Because the facts from Wilder's email and the responses from FHEO do not fully develop Wilder's allegations, many of the facts contained herein were obtained from a statement provided by Cheryl Ann Burrichter, Chief of the Intake Branch of FHEO. Ms. Burrichter was responsible for reviewing Wilder's complaints at FHEO, and in this capacity became familiar with the discrimination inquiries Wilder made.

2

On September 10, 2008, Wilder submitted Inquiry Nos. 262494, 262495 and 262497 to FHEO.  In Inquiry No. 262494, Wilder alleged incidents of vandalism, assaults from other tenants in his building, problems with the local police and failure on behalf of his landlord to alleviate these problems.  Wilder also alleged that he was discriminated against because he filed complaints against other tenants with the local police and courts.  In Inquiry No. 262495, Wilder claimed that he had been retaliated against for reporting criminal behavior including underage drinking and underage sex.  In Inquiry No. 262497, Wilder alleged that he had been discriminated against when he was involuntarily committed by Morning Star Baptist Church after he purportedly threatened his parents. On September 10, 2008, FHEO sent Wilder a letter explaining that it lacked jurisdiction over each of these inquiries because none provided evidence "that any discriminatory action took place, which specifically involved a basis or an issue under which this Office has jurisdiction."

### III.     Inquiry No. 267003

On November 18, 2008, Wilder submitted Inquiry No. 267003, which appears to allege that he was assigned an apartment with heating problems that gave him headaches, and that strangers were breaking into his apartment while he was asleep.  Shortly thereafter, an Equal Opportunity Specialist conducted a telephone interview with Wilder to discuss these various allegations.  On November 19, 2008, FHEO sent Wilder a letter explaining that it lacked jurisdiction over this inquiry because there was no evidence that discriminatory actions took place under the FHA.

### STANDARD OF REVIEW

Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a).  Rule 12(b)(6) of the

Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), and therefore a Rule 12(b)(6) motion tests the legal sufficiency of a complaint.

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss. *Id.* at 555. Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See id.* (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)).

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* On a spectrum, the Supreme Court has recently explained that the plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At bottom, the court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

## DISCUSSION

**I.      Wilder's Petition for Writ of Mandamus**

Wilder fails to allege facts that would entitle him to a writ of mandamus. A petition for writ of mandamus is a drastic remedy and will be granted only in the most extraordinary circumstances. *Kerr v. United States Dist. Court for N. District.*, 426 U.S. 394, 402 (1976). A federal court will issue a writ only if the petitioner has shown the co-existence of three elements: (1) a clear right to the relief sought; (2) a clear duty on behalf of the respondent to do the particular act requested by the petitioner; and (3) an alternative adequate remedy cannot be available. *Estate of Michael by Michael v. Lullo*, 173 F.3d 503, 513 (4th Cir. 1999) (citing *First Fed. Sav. & Loan Ass'n v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988)). Where the relief sought is against a public official, "the alleged duty to act [must] involve a mandatory or ministerial obligation which is so plainly prescribed as to be free from doubt." *Id.*

### A.     A Clear Right to the Relief Sought

Wilder has not shown a clear right to the relief sought. Under the FHA, individuals who believe they have been subjected to, or are about to be subjected to, a discriminatory housing practice can file a complaint with HUD within one year of the alleged discrimination. 42 U.S.C. § 3610(a)(1)(A)(i). Upon the filing of a complaint, HUD must determine, within 100 days after the filing of the complaint, "whether reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur . . . ." 42 U.S.C. § 3610(g). If HUD determines that reasonable cause exists, it will issue a charge on behalf of the aggrieved person. 42 U.S.C. § 3610(g)(2)(A). If HUD determines that no reasonable cause exists, then it shall promptly dismiss the complaint. 42 U.S.C. § 3610(g)(3).

Despite his various grievances, there are no facts that show that HUD's management of the case amounted to "discriminatory housing practices." 42 U.S.C. § 3602(f). Moreover, Wilder failed to establish that he made the inquiries within one year of the alleged discriminatory

behavior. 42 U.S.C. § 3610(a)(1)(A)(i). Finally, Wilder never addressed how the FHA applies to the housing unit in question. 42 U.S.C. § 3603(b). Accordingly, Wilder has not met the burden required to establish that a clear right to further investigation of his complaints exists under the FHA procedures.

> **B.** **A Clear Duty on Behalf of HUD**

HUD does not have a clear duty to continue to investigate Wilder's complaints. Under the FHA, HUD has a duty to determine "whether reasonable cause exists to believe that a discriminatory housing practice has occurred." 42 U.S.C. § 3610(g)(1). However, HUD is granted substantial discretion to determine whether to pursue an enforcement action. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."). Therefore, Wilder faces a stiff burden in proving HUD had a "clear duty" to further investigate his inquiries.

In this case, HUD fully addressed and considered Wilder's myriad inquiries. FHEO's determination that Wilder's inquiries did not give rise to the FHA's jurisdiction was proper because Wilder presented no evidence to support his claims outside of his own self-serving statements. Furthermore, on multiple occasions a HUD Equal Opportunity Specialist spoke with Wilder regarding his various inquiries. Furthermore, HUD's repeated decisions that enforcement actions were not required to address Wilder's complaints were within its broad discretion. Because HUD's decisions were based on a fair review of Wilder's inquiries and within its discretion, Wilder has failed to show that HUD had a clear duty to continue investigating his complaints.

> **C.** **Availability of an Adequate Alternative Remedy**

Wilder cannot demonstrate that he lacked an alternative remedy because there are other ways to obtain redress for discriminatory housing practices.  The FHA specifically provides that an aggrieved person may file a civil action in a United States district or state court within two years of the alleged discriminatory housing practice.  42 U.S.C. § 3613(a)(1)(A).  Moreover, a petitioner may file a civil claim while HUD is processing the petitioner's complaint or after HUD has issued a determination of no reasonable cause.  42 U.S.C. § 3613(a)(2).  Thus, Wilder had two alternatives available to him to redress his grievances.

## II.     Wilder's Mental Disability and the Statute of Limitations

This Court has previously noted Petitioner's contention that he has suffered discrimination as a result of a mental disability.  By Order of February 2, 2009, this Court instructed the Defendants to address whether said disability might toll any limitations period with respect to Wilder's filing a housing complaint under the FHA or the Americans with Disability Act ("ADA").  As a general matter, a statute of limitations runs against all persons, regardless of disability, unless the statute explicitly contains an exception.  *Vogel v. Linde*, 23 F.3d 78, 80 (4th Cir. 1994).  This rule is routinely applied "to federal statutes that contain a limitations period but no exception for disability." *Id.*  In this case, the FHA does not contain an express exception to the one year limitations period for filing administrative claims with HUD, 42 U.S.C. § 3610(a), nor does it list an exception to the two year limitations period for filing actions in United States Federal District or State courts, 42 U.S.C. § 3613(a).  Since the potentially applicable statutes do not take into account an aggrieved party's mental disability, they provide no way for Wilder to toll the relevant limitations period based on his disability alone.

In some extreme cases, however, courts have applied equitable tolling where a petitioner suffers from a mental disability. *See generally Pricer v. Butler*, No. 07-118, 2007 U.S. Dist. LEXIS 67359 (E.D. Va. Sept. 12, 2007). However, as explained in *Pricer*, "while some courts have allowed equitable tolling based on mental incapacity alone, they have allowed it only in "exceptional circumstances," and "for that period of time [in] which mental incapacity rendered the plaintiff incapable of pursuing any remedy." *Id.* a 13 (citations omitted). Additionally, "equitable tolling must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Gayle v. UPS*, 401 F.3d 222, 226 (4th Cir. 2005) (internal quotation marks omitted).

In the case at hand, Wilder cannot demonstrate that his mental disability made him unable to pursue a remedy in federal court. To the contrary, Wilder has filed numerous lawsuits against the federal government in the United States District Court for the District of Maryland, including one as recently as April 2, 2009.[2] Moreover, no specific facts have been alleged concerning the nature of Wilder's mental disability. *See also Pricer*, 2007 U.S. Dist. LEXIS 67359, at *13 ("In the underlying case, [Plaintiff] Ms. Eckhardt has been a named plaintiff in every action brought by Plaintiffs since October 21, 2003, when Plaintiffs brought their first federal action. Given that fact, Plaintiffs cannot now contend that Ms. Eckhardt has been incapable of pursuing a remedy due to her incapacity."). Because Wilder was fully capable of pursuing an adequate remedy in federal court, an exception to the general limitations period cannot be made on account of Wilder's disability. Thus, the limitations period will not be tolled.

## **CONCLUSION**

---

[2] *See, e.g.*, *Wilder v. Astrue*, 1:09-cv-00841-WMN (D. Md. 2009); *Wilder v. Preston*, 1:09-cv-00155-RDB (D. Md. 2009); *Wilder v. Leavitt*, 1:08-cv-2742 WDQ (D. Md. 2008); *Wilder v. Griffin*, 1:08-cv-1277-CCB (D.Md. 2008); *Wilder v. Chertoff*, 1:07-cv-02541-BEL (D. Md. 2007); *Wilder v. Shalala*, 1:07-cv-1809-FNS (D. Md. 1997).

For the reasons stated above, Defendants' Motion to Dismiss (Paper No. 9) is GRANTED.  A separate Order follows.


Dated: November 23, 2009                              /s/_____
                                                     Richard D. Bennett
                                                     United States District Judge